# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**John Doe,**

    **Plaintiff,**

**-V-**
                                              Case No. 2:05-CV-0901
                                              JUDGE SMITH
                                              Magistrate Judge Kemp

**The Salvation Army,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

Plaintiff John Doe brings this action against The Salvation Army and the supervisor of the Salvation Army Warehouse in Columbus, Ohio. Plaintiff asserts Defendants unlawfully discriminated against him because of his disability in violation of Section 504 of the Rehabilitation Act of 1973 and Ohio Revised Code Section 4112.02(A). Defendants have moved for summary judgment. (Doc. 18). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. FACTS

Plaintiff John Doe[1] is an individual citizen of the State of Ohio and resides in Columbus. Plaintiff is thirty-four years old and he has an Ohio driver's license. Defendant The Salvation Army is a religious and charitable organization that provides social services and is incorporated

---

[1] Plaintiff has been granted permission by this Court to proceed with this case by pseudonym because he has had to disclose medical and background information that is extremely sensitive and of a personal nature.

in New York. The Salvation Army facilities in Columbus, Ohio are part of the Eastern Territory, which is owned and controlled by The Salvation Army in New York. The Columbus Adult Rehabilitation Center ("ARC") is a program offered by the Salvation Army. The program offers rehabilitation for individuals with alcohol or drug dependencies. The ARC program is self-sustaining, in that donations are collected at a warehouse in Columbus and sorted by participants in the program. The items are then sent to the thrift stores to be sold. Money received from the sale of those goods supports the ARC.

Plaintiff John Doe has been diagnosed with schizophrenia and paranoid delusional disorder. Plaintiff has been hospitalized on five occasions for his mental illness, in 1995, 1996, 1999, 2002-2003, and 2004. Plaintiff currently takes prescription Risperdal for his mental illness and also Cogentin to control the side effects of the psychotropic medication and Trazadone as a sleep aid. Plaintiff asserts in his Complaint that according to his psychiatrist, Dr. Asim Farooqui, Plaintiff has been medication-compliant and continues to be free of symptoms since his last hospitalization.

Plaintiff is a client of the Center for Vocational Alternatives ("COVA"), located in Columbus, Ohio. COVA provides education and/or training to enable people with physical and mental impairments to obtain gainful employment. Mr. Corey DeGraw is Plaintiff's career developer at COVA and assists him in job training and job searching. Mr. Charles Snider, the warehouse manager for the ARC, had worked with the COVA agency in the past. In March 2005, at Mr. DeGraw's suggestion, Plaintiff filled out an application for a truck driving job with the Salvation Army in Columbus. Mr. DeGraw was in contact with the Columbus ARC on Plaintiff's behalf. Mr. DeGraw was informed by Defendant Snider, that there were no truck driver openings at the time Plaintiff filled out his application, but to check monthly for openings

for part-time drivers because it was a fairly high turnover position.

On May 12, 2005, Defendant Snider called Mr. DeGraw to ask if Plaintiff could come to the Salvation Army warehouse to fill out a driver's abstract and to take a driver's test.  Mr. DeGraw scheduled Plaintiff's appointment for Monday, May 16, 2005, at 10:30 a.m. and Mr. DeGraw accompanied Plaintiff to this appointment.  Defendant Snider spoke with Plaintiff and Mr. DeGraw about a part-time truck driver position, 3 days per week, 8 hours per day, paying $7 per hour.  Defendant Snider did not provide a position description, nor did he specify which days of the week were to be worked.

During the course of the meeting, Plaintiff stated that he could not work on Fridays because he had a weekly doctor's appointment with his psychiatrist to pick up his medications.  Defendant Snider asked Plaintiff what type of medications he was taking.  Plaintiff responded that he was taking psychotropic medications.  Defendant Snider then informed Plaintiff that he was not sure he would be able to drive for the Salvation Army because of insurance reasons.  Defendant Snider claims he was pressed to find a driver, so he hired someone else.  Plaintiff asserts that he was then and still remains interested in part-time truck driver's positions with the Salvation Army in Columbus.

Plaintiff initiated this case on September 29, 2005, asserting claims of disability discrimination and seeking damages under Section 504 of the Rehabilitation Act of 1973 and Ohio Revised Code Section 4112.02.  Plaintiff claims that the Salvation Army's failure to hire him was disability discrimination.  Specifically, Plaintiff claims that the fact that Defendant Snider was concerned with the effect that the medication he was taking would have on his driving was discrimination based on disability.  The Salvation Army denies any discrimination based on disability and denies the applicability of Section 504 to this case.

## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[2]

---

[2] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice" ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

5

### III.   DISCUSSION

A.   **Disability Discrimination Claim**

Section 504 of The Rehabilitation Act of 1973, through which the Americans with Disabilities Act is applied to the states and localities receiving funds from the Federal Government, provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall solely by reason of his or her disability, be excluded from the participation in, or be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a). Thus, this section requires that Plaintiff prove four separate elements: (1) that he is a disabled person under the Act; (2) that he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his disability; (3) that the relevant program or activity receives federal financial assistance; and (4) that he is otherwise qualified for participation in the program or activity. *See Sandison v. Michigan High Sch. Athletic Assn., Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995).

Both the Rehabilitation Act and the Americans with Disabilities Act ("ADA") prohibit discrimination against disabled persons. Courts have held that the analysis under one "roughly parallels" the other. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). "Because the standards under both the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997); *see also Burns v. City of Columbus*, 91 F.3d 836, 842 (6th Cir. 1996) (citing 29 U.S.C. § 794(d)) ("By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act

cases alleging employment discrimination") .  Therefore, this Court will rely upon cases falling under the ADA, as well as the Rehabilitation Act of 1973.

    **1.**        **Disabled person**

The threshold prerequisite for the establishment of a *prima facie* case of disability discrimination is a showing that the Plaintiff is a disabled person as defined by statute.  *Harris v. Adams*, 873 F.2d 929, 933 (6th Cir. 1989).  Defendants contend that Plaintiff is not an individual with a disability within the meaning of the statute.  Section 504 of the Rehabilitation Act defines an "individual with handicaps" as any person who:  (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B).  As interpreted, the Act defines disability as one which interferes with normal activities of daily living.  Similarly, Ohio Revised Code §4112.01(A)(13) defines disability as a physical or mental impairment that substantially limits a major life activity; being regarded as having such an impairment; or having a "record of a physical or mental impairment."

Plaintiff asserts that he has a "record of" mental impairment that substantially has substantially limited his major life activities.  Plaintiff's history of mental illness began in 1995 when he was diagnosed with paranoid schizophrenia and hospitalized at Bellevue Hospital in New York.  In 1996, Plaintiff had another psychiatric hospitalization at Bronx State Hospital.  In 2001, Plaintiff was charged with felonious assault and was evaluated and found to have a mental illness (paranoid schizophrenia) that so impaired his ability to reason that he did not know the wrongfulness of his actions.  As a result of this evaluation, on February 28, 2002, Plaintiff was found not guilty by reason of insanity and committed to the forensic unit at Twin Valley

Behavioral Healthcare in Columbus.  Plaintiff remained in Twin Valley until November 10, 2003, when he was granted conditional release into the community on the hospital's recommendation.  Plaintiff has since complied with his medications and treatment and describes his mental illness as stabilized.  Defendant further points out that he was functioning well in the community.  Nonetheless, Plaintiff still claims that he has a history of mental impairment that substantially limited his major life activities of self-care, learning, and working.  Plaintiff therefore asserts that he is a person with a disability as defined by the statutes.

While the Court and even Defendants recognize Plaintiff's diagnosis of a mental impairment, this is not the "sine qua non" of being disabled within the meaning of the ADA.  *See Adams v. Rochester General Hospital*, 977 F. Supp. 226, 231 (W.D.N.Y. 1997).  "A 'mental impairment' does not rise to the level of 'disability' unless such impairment 'substantially limits' a major life activity." *Id.* at 232.  Thus, Plaintiff's record of mental impairment alone is insufficient to establish a disability, he must prove that his disorder interferes with one or more of the major life activities.  Major life activities is defined in the EEOC regulations as functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  29 C.F.R. §1630.2(i).  By Plaintiff's own admissions in his depositions, he does not appear to have any trouble performing all major life activities:

> Q. You're able to take care of yourself?
> A. I am able to take care of myself.
> Q. You're able to go to school.
> A. I'm able to go to school.
> Q. You can work, if you had a job?
> A. I can work.
> Q. You're able to read and write?

8

| | | |
|---|---|---|
| A. | I write.  I can read. | |
| Q. | Okay.  You can basically take care of all the activities of daily living? | |
| A. | Correct.  My ADLs. | |
| Q. | So your ADLs are okay? | |
| A. | Correct. | |
| Q. | Is there anything that you feel from the standpoint of just daily living that you cannot do? | |
| A. | I'm good.  I'm can do what I'm taught to do. | |

(Doe Depo. at 35-36).

Therefore, based on Plaintiff's own admissions in his deposition, the Court finds that Plaintiff has failed to show that he is disabled within the meaning of the Rehabilitation Act or the Ohio Revised Code.  The Court recognizes Plaintiff's medical diagnosis of schizophrenia, however, this is insufficient to be considered disabled under the act.  Further, Plaintiff's problems occurred in the past and with medication, Plaintiff has not encountered any problems since 2003.  Plaintiff has failed to present a *prima facie* case of disability discrimination because he cannot prove that he is disabled.

**2. Subjected to Discrimination solely because of the Disability**

Even if Plaintiff were to establish that he is in fact disabled under the act, he cannot establish that he was subjected to discrimination solely because of his disability, which is the second element of a *prima facie* case of disability discrimination.  *See Adams*, 922 F. Supp. at 236 ("the employer must 'at the very least...have knowledge of the disability.'").

Defendants argue that Plaintiff cannot show that the challenged job action was taken solely by reason of his disability because Defendants were not even aware of his diagnosis of schizophrenia and parnoia.  Prior to the interview, Defendant Snider did not have any

9

information about Plaintiff's background or his condition. (Snider Depo. at 32:2). Plaintiff agrees that Defendants did not have any information about his condition, but Plaintiff bases his allegations on the fact that Defendants knew he took medication. (Doe Depo. at 60:1-8).

Plaintiff argues that Defendants' argument is irrelevant because he was a job applicant in a pre-employment interview, not an employee and therefore such question was a *per se* violation of the applicable statutes and regulations.[3] While Plaintiff initiated this conversation regarding medication, it was probably not the right time for Defendant Snider to inquire about what medications Plaintiff was taking. Nonetheless, this was one isolated incident. Construing all the facts in Plaintiff's favor, Defendants were still only aware during the interview that Plaintiff was taking psychotropic medications. The ADA and therefore the Rehabilitation Act does not require employers to guess that a plaintiff has an alleged disability. *See Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995); *see also Adams*, 922 F. Supp at 236 (employer not obligated to observe an employee for symptoms of a disability, and then divine that the employee actually suffers from a disability).

Based on this information, Defendant Snider was concerned as to whether Plaintiff could even drive the trucks because of insurance issues. The fact that Defendant Snider was aware of the types of medication Plaintiff was on does not require the conclusion that Defendant regarded Plaintiff as having a disability. Further, even if Defendants believed that Plaintiff may have posed some risk if driving the trucks while medicated, Defendants are still entitled to summary judgment. Courts have unanimously held that an individual with a disability "cannot perform the essential functions of a job if his handicap poses a significant risk to those around him." *F.F.*

---

[3] Plaintiff, however, fails to cite to any caselaw in support of this argument.

*v. City of Laredo*, 912 F. Supp. 248, 253 (S.D. Texas 1995); see also E.E.O.C. v. Amego, Inc., 110 F.3d 135 (1st Cir. 1997) (where the record demonstrates that an employment candidate may pose a significant risk to the health and safety of others, which cannot be eliminated by reasonable accommodation, summary judgment in favor of the employer is appropriate).

Based on the foregoing discussion, the Court finds that Plaintiff Doe has failed to present sufficient evidence from which a reasonable jury could find that he is in fact disabled under the act, nor can he establish that Defendants failure to hire him was a result of his disability. Therefore, Plaintiff Doe has not fulfilled his burden of establishing a *prima facie* case of disability discrimination.[4] Defendants The Salvation Army and Charles Snider are entitled to summary judgment in their favor on Plaintiff's federal and state disability discrimination claims.

### IV. CONCLUSION

Based on the above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 18).

The Clerk shall enter a final judgment in this case in favor of Defendants and against Plaintiff.

---

[4] Having concluded that Plaintiff cannot establish the first two elements of a *prima facie* case of disability discrimination, the Court does not believe it is necessary to analyze the final two elements: that the relevant program or activity receives federal financial assistance; and that he is otherwise qualified for participation in the program or activity.

The Clerk shall remove Document 18 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

    **IT IS SO ORDERED.**

                                          */s/ George C. Smith*
                                          **GEORGE C. SMITH, JUDGE**
                                          **UNITED STATES DISTRICT COURT**