UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN DOE,**

       **Plaintiff,**

                                             Civil Action 2:05-cv-00901

**v.**                                               Magistrate Judge E.A. Preston Deavers

**THE SALVATION ARMY,** *et al.***,**

       **Defendants.**

### ORDER

This matter is before the Court for consideration of Defendant's Motion for Summary Judgment (Doc. # 18). For the foregoing reasons, the Court **GRANTS** the Motion for Summary Judgment.

### I. BACKGROUND

A. <u>Procedural History</u>

Plaintiff John Doe[1] brings this action against Defendants The Salvation Army, a New York Corporation ("The Salvation Army").[2] Plaintiff maintains that The Salvation Army unlawfully rejected him for employment in violation of Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794. (Am. Compl. ¶¶ 39–61.) According to Plaintiff, the Defendants improperly rejected him for a trucking job with the Columbus Adult Rehabilitation Center ("ARC"), which is a program operated by The Salvation Army.

---

[1] The Court has given Plaintiff permission to proceed under a pseudonym because of the sensitive and personal nature of his medical background.

[2] Plaintiff also brought a state law claim against Defendant Chuck (Last Name Unknown) in his capacity as supervisor for The Salvation Army. In its November 17, 2010 Order the Court dismissed Plaintiff's state law claim against Defendant Chuck (L.N.U.) without prejudice. (Doc. # 52.)

In July 2006, The Salvation Army filed its Motion for Summary Judgment. The Salvation Army asserts that it is entitled to summary judgment because Plaintiff cannot demonstrate that he is disabled; cannot show that The Salvation Army had knowledge of his disability; and cannot demonstrate that The Salvation Army did not hire him because of the perceived disability.[3] (Mem. in Supp. of Mot. for Summ. Judg. 2.) Additionally, The Salvation Army maintains that because the Columbus ARC does not receive federal funding, Section 504 of the Rehabilitation Act is not applicable. (*Id.*)

The Court issued an Opinion and Order on June 4, 2007, granting the Motion for Summary Judgment. The Court based its conclusion on two findings. First, the Court found that Plaintiff could not demonstrate he was disabled within the meaning of the Rehabilitation Act or the Ohio Revised Code. (Doc. # 26 at 7–9.) Second, the Court determined that a reasonable jury could not find that Defendants failed to hire Plaintiff as a result of his alleged disability because the record contained insufficient evidence to conclude that Defendants were aware of his condition.[4] (*Id.* at 9–11.)

On July 1, 2008, the United States Court of Appeals for the Sixth Circuit reversed and remanded the Court's June 4, 2007 Order. *Doe v. Salvation Army in the United States*, 531 F.3d 355, 359 (6th Cir. 2008). In particular, the Sixth Circuit held that "there are genuine issues of

---

[3] The Court has previously set forth the facts of this case in detail in its June 4, 2007 Opinion and Order. Because the sole issue left for this Court's consideration does not involve the facts surrounding Plaintiff's interview with Columbus ARC, the Court will not provide a description of the incident.

[4] The Court did not reach a decision as to whether the relevant program or activity receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, which is the principal dispute at issue in the instant Motion. (Doc. # 26 at 11 n.4.)

2

material fact as to whether Doe qualifies as 'disabled' under the Rehabilitation Act and whether The Salvation Army's failure to hire Doe was based solely on Doe's purported disability."[5] *Id.* at 356.

The parties unanimously consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c). The Court held a status conference in which the parties reported that one potentially case-dispositive issue remained following the mandate from the Court of Appeals for the Sixth Circuit. Specifically, the parties dispute whether The Salvation Army is a 'recipient of federal funds' under Section 504 of the Rehabilitation Act.

B. The Parties' Contentions and Relevant Facts

In its Motion for Summary Judgment, The Salvation Army contends that the Rehabilitation Act does not apply to it as an entity because it is not a "program or activity" within the meaning of the Act. As The Salvation Army notes, Columbus ARC does not receive federal financial funding. (Mem. in Supp. of Mot. for Summ. Judg. 12.) Additionally, The Salvation Army maintains that it does not receive federal financial assistance as an entire organization. (*Id.*) Relevant to this inquiry, the Salvation Army's Responses to Plaintiff's Interrogatories specifically provide:

> The [Salvation Army's] financial statement indicates that the Eastern territory received a total of $148 million of government funds from all sources, only part of which would be federal financial assistance. . . . The Eastern territory receives federal financial assistance from a number of federal sources. The greatest source of federal financial assistance comes from the Department of Housing and Urban Development. . . . No federal funding is used to support the operations of the Columbus ARC. . . . The entity that receives the funds is The Salvation Army, a New York Corporation. The funds are received on the basis of contracts awarded

---

[5] The Court also noted that Plaintiff abandoned his state law discrimination claim. *Doe*, 531 F.3d at 357 (citing *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir.1991)).

> by federal agencies (for the greatest part, the Department of Housing and Urban Development) to local units of the Eastern Territory. These federal contracts are sought and/or applied for by local units operating within the Eastern Territory. The contract is submitted by the local unit to the Board of Trustees of The Salvation Army, a New York Corporation for approval. The Columbus [ARC] has not applied for or received any federal contract.

(Resp. to Pl.'s Interrogs. Answers 6–7.) Consequently, The Salvation Army contends that because "only a few entities of the national organization receive assistance," Section 504 of the Rehabilitation Act does not apply to the Columbus ARC, and, therefore, The Salvation Army is entitled to judgment as a matter of law. (Mem. in Supp. of Mot. for Summ. Judg. 12.)

Plaintiff does not contend that Columbus ARC receives federal funds. Rather, Plaintiff asserts that because The Salvation Army is principally engaged in social services, and because portions of The Salvation Army receive federal funding, Section 504 of the Rehabilitation Act applies to the entire entity. (Pl.'s Mem. Opp'n Summ. Judg. 5–8.) To support this assertion Plaintiff relies on The Salvation Army's responses to his interrogatories as well as the deposition of Major James Reynolds, an officer of The Salvation Army. (*Id.*) The Salvation Army identified its principal activities as follows:

> The Salvation Army . . . is an international religious charitable organization with its own body of doctrine, its own commissioned Officers who are ministers of the Gospel, and its own adherents. Founded by General William Booth in London in 1865 and active in over 100 countries throughout the world, the primary purpose of The Salvation Army is to preach the Gospel of Jesus Christ to men and women untouched by ordinary religious efforts, the underprivileged, homeless, alcoholics, drug addicts, and all those rejected by society. The Salvation Army is, and has been recognized for all purposes to be, a church, a religious denomination. The commissioned Officers are ministers of the Gospel and are the equivalent of ordained ministers and priests of other Christian denominations. . . .
>
> The Adult Rehabilitation Centers, operated without assistance from the government . . . constitute a principal means whereby The Salvation Army practices its religion in the rehabilitation of spiritually and socially handicapped

> individuals through a residential program of religious teaching and counseling and work therapy. The Adult Rehabilitation Center is a self-contained religious community with living quarters for the residents, known as "beneficiaries", as well as a chapel, a dining room and recreation rooms. . . .
>
> In addition to over 400 Corps Community Centers (the churches of The Salvation Army), the Salvation Army operates in the Eastern Territory many religious and charitable institutions, including Harbor Light Centers (3), senior citizens centers and clubs (111), community centers and boys and girls clubs (89), camps (13), children's residential care facilities (4), children day care centers (47), adult day care centers (8), group homes for temporary housing (98), as well as Adult Rehabilitation Centers (40). . . .
>
> The Salvation Army, Eastern Territory, also provides comprehensive social ministries to provide prevention, support, protection, alleviation, rehabilitation, treatment, guidance, education, and opportunities for personal development. The Salvation Army works to meet physical, social, psychological, emotional, and spiritual needs of families and individuals. The Salvation Army has designed a range of programs almost as broad as human need and partners with churches, charities, and organizations to reach as many people as is practical.

(Resp. to Pl.'s Interrogs. Answer 9.) Additionally, Major Reynolds described that The Salvation Army is "a religious charitable organization; so our motivation is to God, but our service is to mankind." (Reynolds Dep. 19:12–14.) Finally, Plaintiff maintains that the Civil Rights Restoration Act of 1987 overruled a "program specific" application of the Rehabilitation Act, and, therefore, if an entity receives federal assistance, the entire organization is subject to Section 504 of the Rehabilitation Act. (Pl.'s Mem. Opp'n Summ. Judg. 7–8.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), the Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard the "'mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact.'" *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986)). An issue of material fact exists when a "'reasonable jury could return a verdict for the nonmoving party.'" *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 264 (6th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248).

In a motion for summary judgment the moving party "bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law." *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In determining whether a moving party has met its burden, "[t]he evidence must be viewed in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

If the moving party satisfies its burden, and the Court has provided adequate time for discovery, "the nonmoving party 'must present significant probative evidence' to demonstrate that 'there is [more than] some metaphysical doubt as to the material facts.' " *Longaberger*, 586 F.3d at 465 (quoting *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). In other terms, "[t]he nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). The Federal Rules of Civil Procedure further provide:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading;

>rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

### III.  LEGAL ANALYSIS

A. <u>Applicable Law</u>

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall . . . be subjected to discrimination under any *program or activity receiving Federal financial assistance* . . . ."  29 U.S.C. § 794(a) (emphasis added).  As the United State Court of Appeals for the Sixth Circuit has noted:

>In order to make out a prima facie case for discrimination, a claimant must prove four elements: (1) that he is disabled; (2) that he was otherwise qualified for the position; (3) that he was excluded solely by reason of his disability; (4) *and that the relevant program is receiving federal financial assistance*.

*Doe*, 531 F.3d at 358 (citing *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030-31 (6th Cir. 1995)) (emphasis added).

In this case, neither party asserts that the Columbus ARC, the specific "program" of The Salvation Army involved in this dispute, receives federal funding.  Furthermore, both parties agree that other "programs," or local units, of The Salvation Army receive federal funding, including funds from the Department of Housing and Urban Development.  (Resp. to Pl.'s Interrogs. Answers 6–7.)  Accordingly, this case calls upon the Court to interpret the scope of the phrase "program or activity" as it is used within Section 504 of the Rehabilitation Act, and render a decision as to whether the Act applies to The Salvation Army as an entire institution.

In 1987, the Supreme Court held that the terms "program or activity" within Title IX of

7

the Education Amendments of 1972 applied only to the specific program receiving federal funds, and did not create institution-wide coverage. *Grove City Coll. v. Bell*, 465 U.S. 555, 573–74 (1984); *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 271 (6th Cir. 1994) (describing the *Grove City* holding); *see also Consolidated Rail Corp. V. Darrone*, 465 U.S. 624, 635–36 (1984) (interpreting "program or activity" within Section 504 of the Rehabilitation Act to be program-specific). In response to the Supreme Court's narrow interpretation, Congress passed the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (1987). In the Act, Congress expanded the definition of the term "program or activity" to a number of federal statutes, including Section 504 of the Rehabilitation Act, for the purpose of restoring "the broad scope of coverage." *Id.*; *see also* S. Rep. No. 100-64, at 3–4 (1987) (describing that the purpose of the legislation was "to overturn the Supreme Court's 1984 decision in [*Grove City*] and to restore the effectiveness and vitality of the four major civil rights statutes that prohibit discrimination in federally assisted programs").

As amended under the Civil Rights Restoration Act of 1987, Section 504 of the Rehabilitation Act provides distinct definitions of "program or activity" for public and private entities. *See* 29 U.S.C. § 794(b); *see also Boswell v. SkyWest Airlines, Inc.*, 217 F. Supp. 2d 1212, 1216 (D. Utah 2002) ("While the term 'program or activity' includes all the operations of certain public entities, *it does not include all operations of a private entity if that private entity receives federal funds for a specific and limited purpose*.") (emphasis added). Congress specifically provided two different means by which an entire private entity may be classified as a "program or activity." *See* 29 U.S.C. § 794(b). The Act now defines "program or activity" as follows:

8

> For the purposes of this section, the term "program or activity" means all of the operations of —
>
> . . .
>
> (3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—
>   (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>   (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation
>
> . . .
>
> any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b)(3)(A); *see also Squire v. United Airlines, Inc.*, 973 F.Supp. 1004, 1008 (D. Colo. 1997) ("An entire private corporation will only be covered under the amendments if financial assistance is granted to the corporation 'as a whole' or if it is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation.").

B.  Principally Engaged in Social Services

Plaintiff maintains that the Court should consider the Rehabilitation Act applicable to the entire Salvation Army because it is principally engaged in social services. (Pl.'s Mem. Opp'n Summ. Judg. 5.) As noted above, the Act covers an entire private organization if that organization is "*principally engaged* in the business of providing education, health care, housing, *social services*, or parks and recreation . . . [and] any part of [it] is extended Federal financial assistance." 29 U.S.C. § 794(b)(3)(A)(ii) (emphasis added).

Although various courts have recognized that the Civil Rights Restoration Act of 1987 was designed to reject a "program specific" application of the terms "program or activity," the Court has found limited jurisprudence specifically interpreting the phrase "principally engaged in the business of . . . social services" within the meaning of 29 U.S.C. § 794(b)(3)(A)(ii), or related civil rights statutes. *See, e.g.*, *Horner*, 43 F.3d at 271 ("The legislative history [of the

9

Civil Rights Restoration Act] describes the effect of the amendments, stating that the definitions of 'program or activity' and 'program' 'make clear that discrimination is prohibited throughout entire agencies or institutions if any part receives Federal financial assistance.'") (citing S. Rep. No. 100-64, at 6); *Justus v. Junction Ctr. for Indep. Living, Inc.*, 673 F.Supp.2d 462, (W.D. Va. 2009) (finding that Section 504 of the Rehabilitation Act covered all of the operations of the Junction Center, a private non-profit network of independent living centers, pursuant to 29 U.S.C. § 794(b)(3)(A));  *Ruffin v. Rockford Mem'l Hosp.*, 181 Fed. Appx. 582, 585 n.\*\* (7th Cir. 2006) (opining that a plaintiff could have brought a Section 504 Rehabilitation Act claim against Rockford Memorial Hospital as a covered "program or activity" under section 794(b)(3)(A)(ii)); *Sindram v. Fox*, No. 07-0222, 2009 WL 541578, at \*4 (E.D. Pa. Feb. 26, 2009) ("The key is the definition of 'program or activity,' which is statutorily defined to include state and local governments and instrumentalities, colleges, universities and *certain corporations*.") (emphasis added).

Section 504 of the Rehabilitation Act does not define the meaning of "principally engaged in . . . social services."  *See* 28 U.S.C. § 794; *see also* 29 U.S.C. § 705 (providing general definitions for terms within 29 U.S.C. § 701 *et seq.*).  Furthermore, the legislative history of the Civil Rights Restoration Act of 1987 provides no explicit definition of this phrase.[6]  *See* S. Rep. No. 100-64; *see also Dorer v. Quest Diagnostics Inc.*, 20 F. Supp. 2d 898, 900 n.2 (D. Md. 1998) ("[T]he legislative history of the amendment does not expressly define what constitutes

---

[6] As the United States Court of Appeals for the Sixth Circuit has recently noted, if the language of a statute is unclear, a court may look to the relevant legislative history.  *Beaven v. United States Dept. of Justice*, – F.3d —, 2010 WL 3730909, at \*4–5 (6th Cir. Sept. 27, 2010) (citing *Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010)).

'health care' . . . .).  As applied here, the legislative history clarifies that a private corporation, which receives any federal funding, is entirely covered "if the corporation provides a public service, such as social services, education, or housing . . . ." S. Rep. No. 100-64, at 4.  Moreover, and of significant importance to this case, Congress noted in the legislative history that, "*[b]ecause they are principally religious organizations,* institutions such as churches, dioceses and synagogues would not be considered 'principally engaged in the business of providing education, health care, housing, social services or parks or recreation,' *even though they may conduct a number of programs in these areas*."  *Id.* at 18 (emphasis added).

Although the question of whether section 794(b)(3)(A)(ii) covers The Salvation Army is extremely close, the Court ultimately concludes that The Salvation Army is not principally engaged in the business of social services within the meaning of Section 504 of the Rehabilitation Act. The dispute regarding whether the Rehabilitation Act covers The Salvation Army is a close one because of the mixed religious and social nature of the activities that the organization sponsors.  The Salvation Army clearly has a religious mission, with its "primary purpose . . . [being] to preach the Gospel of Jesus Christ to men and women untouched by ordinary religious efforts."  (Resp. to Pl.'s Interrogs. Answer 9.)  The Salvation Army considers itself to be a religious denomination; its Officers to be ministers of the Gospel, the equivalent of ministers and priests; and its Community Centers to be churches of The Salvation Army.  (*Id.*)

On the other hand, The Salvation Army provides numerous activities and operations that are also social in nature.  The Salvation Army specifically states that it operates "Harbor Light Centers (3), senior citizens centers and clubs (111), community centers and boys and girls clubs (89), camps (13), children's residential care facilities (4), children day care centers (47), adult

11

day care centers (8), group homes for temporary housing (98), as well as Adult Rehabilitation Centers (40)." (*Id.*) Additionally, The Salvation Army describes its mission as one to administer "comprehensive social ministries to provide prevention, support, protection, alleviation, rehabilitation, treatment, guidance, education, and opportunities for personal development." (*Id.*)

The Court finds the meaning of the phrase "principally engaged in the business of providing . . . social services" unclear from its plain text, at least as to its application to a religious charitable organization that performs various social works. *See* 29 U.S.C. § 794(b)(3)(A). As explained above, however, the legislatively history of the relevant amendment provides that "principally religious organizations," including churches, do not fit in this category even though these organizations "may conduct a number of programs in these areas." S. Rep. No. 100-64, at 18. The Court finds this congressional guidance highly persuasive in reaching its decision. Based on the evidence of record regarding its principal activities,[7] the Court concludes that The Salvation Army is a principally religious organization.[8] The Court does not doubt, and Plaintiff has provided no reason to question, that the purpose and

---

[7] Plaintiff provides no evidence to contest the information within The Salvation Army's answers to interrogatories or other Rule 56 materials, and, in fact, relies upon these interrogatories in opposing summary judgment. (Pl.'s Mem. Opp'n Summ. Judg. 6–7.) Furthermore, although Plaintiff maintains that The Salvation Army is principally engaged in social services, he does not explicitly challenge The Salvation Army's status as a religious organization. (*Id.*)

[8] The Court also finds that the deposition testimony of Major Reynolds is consistent with, and supports, its conclusion. Plaintiff empathizes Major Reynolds' statement that The Salvation Army's "service is to mankind." (Reynolds Dep. 19:12–14.) Nevertheless, Major Reynolds also states that the motivation behind this services is religious in nature. (*Id.*) Major Reynolds also described his position with the Salvation Army as "an ecclesiastical relationship" rather than employment. (*Id.* at 7:17–19.)

goal of The Salvation Army is to "preach the Gospel of Jesus Christ." (*See* Resp. to Pl.'s Interrogs. Answer 9.) Furthermore, it would be inappropriate for the Court to distinguish The Salvation Army from other religious organizations, such as more traditional "churches, dioceses and synagogues," simply because it uses different methods to spread its message. *See* S. Rep. No. 100-64, at 18.

Therefore, although The Salvation Army engages in various activities that may fall within the category of "social services," the Court finds that because of its religious nature, it is not principally engaged in the business of social services within the meaning of Section 504 of the Rehabilitation Act. *See id.* Accordingly, the Rehabilitation Act does not apply to the entire Salvation Army, as opposed to the individually funded programs, under 29 U.S.C. § 794(b)(3)(A)(ii).

C. Assistance Provided as a Whole

The Rehabilitation Act will also apply to an entire private entity if "assistance is extended . . . [to the organization] as a whole." 29 U.S.C. § 794(b)(3)(A)(i). In maintaining that the Rehabilitation act applies to The Salvation Army, Plaintiff has not explicitly argued that the organization receives funds as a whole. (*See* Pl.'s Mem. Opp'n Summ. Judg. 6–7.) Because the question is dispositive of whether the Rehabilitation Act applies, however, the Court will consider whether The Salvation Army receives federal funding as a whole.

Once again, the legislative history provides guidance regarding the application of the statute, encouraging a generally narrow interpretation of "as a whole":

> Federal financial assistance extended to a corporation or other entity "as a whole" refers to situations where the corporation receives general assistance that is not designated for a particular purpose. Federal financial assistance to the Chrysler Company for the purpose of preventing the company from going bankrupt would

> be an example of assistance to a corporation "as a whole." Federal aid which is limited in purpose, e.g., Job Training Partnership Act (JPTA) funds, is not considered aid to the corporation as a whole, even if it is used at several facilities and the corporation has the discretion to determine which of its facilities participate in the program. A grant to a religious organization to enable it to extend assistance to refugees would not be assistance to the religious organization as a whole if that is only one among a number of activities of the organization. Further, federal financial assistance that is earmarked for one or more facilities of a private corporation or other private entity when it is extended is not assistance to the entity "as a whole." Nor does S. 557 embody a notion of "freeing up." Federal financial assistance to a corporation for particular purposes does not become assistance to the corporation as a whole simply because receipt of the money may free up funds for use elsewhere in the company.

S. Rep. No. 100-64, at 17–18; *see also Boswell v. SkyWest Airlines, Inc.*, 217 F.Supp.2d 1212, 1217 (D. Utah 2002) (holding that a commercial airline did not receive federal assistance as a whole when it received payment "for serving particular rural airports and potentially unprofitable routes."); *Shotz v. American Airlines, Inc.*, 323 F. Supp.2d 1315, 1319 (S.D. Fla. 2004) (citing *Boswell* for the same proposition).

Here, the Court finds that The Salvation Army does not receive federal assistance as a whole within the meaning of Section 504 the Rehabilitation Act.[9] The Salvation Army admits that it receives federal funding from a number of federal sources, including the Department of Housing and Urban Development. (Resp. to Pl.'s Interrogs. Answer 6.) The evidence adduced by The Salvation Army demonstrates local units within The Salvation Army seek and apply for funds from federal agencies.[10] (Resp. to Pl.'s Interrogs. Answer 7.) Accordingly, the funds The Salvation Army receives are based on contracts that federal agencies award to local units of The

---

[9] The Court finds that both the plain text of 29 U.S.C. § 794(b)(3)(A)(I) and the relevant legislative history support this conclusion.

[10] Plaintiff provides no evidence challenging The Salvation Army's testimony regarding how it receives federal funding.

Salvation Army.  (*Id.*)

Major Reynold's deposition testimony provides further detail regarding The Salvation Army's receipt of federal funds:

> Q. And from what federal agencies or sources did those federal funds come in fiscal year 2005?
>
> A. The majority of the federal funds normally are Department of Housing and Urban Development.
>
> Q. And what type of assistance are you talking about there?
> . . .
>
> A. They are applied for by the individual units in a given location. They are processed through corporate for final approval. They relate -- most of HUD funds relate to structures, facilities where services are provided.
>
> Q. What are the funds used for? I will talk about the HUD funds. What are the HUD funds used for?
>
> A. The HUD funds are used -- In many cases, they are mortgages for facilities that are repaid over a period of time, senior high-rise facilities in most cases.
>
> Q. What else?
>
> A. There are some smaller grants that relate to direct specific programs of a variety of sheltering, et cetera.
> . . .
>
> Q. And you mentioned they go through corporate.  Can you describe what that process is for me, please?
>
> A. Well, the applications are made. Any contracts that -- if in fact the award is approved, the contracts are processed through the corporate office for corporate signature. Anything that requires corporate's signature are processed through the corporate office.
>
> Q. Does the award go to the corporate office?
>
> A. No. The dollars are received locally, accounted for locally. We receive certainly the financial information. That is put into our consolidated

> statements; but the dollars are not received at corporate. They flow through the local entity.
> . . .
>
> Q. And you do have local units that are operating in that they get funds and operate according to those terms?
>
> A. Yes, we do.

(Reynolds Dep. 10–16.)

From the uncontested evidence of record, the Court finds that The Salvation Army is not receiving funding as a whole. Rather than receiving general assistance from the federal government, The Salvation Army allows its local units to seek and apply for federal assistance. The funding from these applications goes to the local units. Under these circumstances, the Court is unwilling to find that Rehabilitation Act applies to The Salvation Army's entire organization under 29 U.S.C. § 794(b)(3)(A)(i). Because The Salvation Army does not receive funding as a whole and is not principally engaged in the business of social services, it is not a "program or activity" within the meaning of 29 U.S.C. § 794(b)(3)(A). Consequently, because the relevant program in this case, the Columbus ARC, does not receive federal funding, Section 504 of the Rehabilitation Act does not apply to it.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** The Salvation Army's Motion for Summary Judgment (Doc. # 18). Accordingly, Plaintiff's claims against The Salvation Army are **DISMISSED** with prejudice. The Clerk is directed to enter judgment against the remaining Defendants in this case[11] and remove this case from the Court's pending case list.

---

[11] Plaintiff identified Defendants The Salvation Army, a New York Corporation, as both The Salvation Army in the United States and The Salvation Army Eastern Territory in the

**IT IS SO ORDERED.**

<u>November 30, 2010</u>        <u>        /s/ *Elizabeth A. Preston Deavers*        </u>
                                            Elizabeth A. Preston Deavers
                                            United States Magistrate Judge

---

original Complaint.